Feed A. Young, P. J.
The above-entitled claims arose out of the appropriations of considerable portions of two adjoining properties located in the Town of Lewiston, Niagara County, New York. The claims were consolidated for the purpose of trial.
At the time of the appropriation in 1958, the claimant, Louise M. Heintz, was the owner of a rectangular shaped parcel of farm land consisting of approximately 36.887 acres fronting about 537 feet on Saunders Settlement Road [New York State Route No. 31] in the Town of Lewiston. The tract extended approximately 2,600 feet north of the road, where it adjoined the Tuscarora Indian Reservation.
The premises had formerly been operated by the claimant and her late husband as a farm, but sometime prior to 1958 she had ceased such operations and had rented her fields to neighboring farmers for nominal amounts.
The land was level and was improved by a one and one-half-story frame dwelling, a barn, and several frame buildings all located in the area adjoining the highway. These buildings were not affected by the taking, and are of little concern herein.
At the time of the appropriation the claimant, Winifred Burns, was the owner of approximately 49.033 acres of level farm land immediately east of the Heintz property, fronting about 758.32 feet on the north side of Saunders Settlement Road, Town of Lewiston. The maximum depth of the property being approximately 2,500 feet. There were no buildings located on *1027 the premises and no use was being made of it at the time of the appropriation.
At the time of the appropriation the area in which the subject properties were located was supplied by electricity, but there were no sewers, public water supply or railroad sidings in the area. Saunders Settlement Road was one of the main arteries of traffic in the general vicinity.
On June 2, 1958, the State of New York appropriated 31.787 acres from the property owned by the claimant, Louise M. Heintz, for improvement and development of the Niagara River, pursuant to section 30 of the Highway Law as made applicable by title 1 of article 5, of the Public Authorities Law, by filing Niagara Mohawk Project Map No. 406, Parcel No. 406 in the office of the County Clerk of Niagara County.
On June 16, 1958 the State of New York appropriated 39.681 acres from the property of the claimant, Winifred Burns, for improvement and development of the Niagara River, pursuant to section 30 of the Highway Law as made applicable by title 1 of article 5 of the Public Authorities Law by filing Niagara Mohawk Power Project, Map No. 404, Parcel No. 404 in the office of the County Clerk of Niagara County.
The court adopts such maps and descriptions of the appropriated property shown and set forth on such maps and reference is made thereto for such descriptions without repetition thereof.
The claim of Louise M. Heintz was filed in the office of the Clerk of the Court of Claims on June 23, 1959. The claim of Winifred Burns was filed in the office of Clerk of the Court of Claims on October 27, 1959. The claims or any part thereof have not been assigned except as herein after indicated.
Claimants failed to serve copies of their claims upon the Attorney-General or the Power Authority (Court of Claims Act, § 11; Public Authorities law, § 1007, subd. 10). However, the Power Authority was represented and heard before the court. Moreover, the claims involved only the question of the amount of compensation to be paid for private property taken for public use. We do not regard these defects as jurisdictional (Sutton v. State of New York, 275 App. Div. 992, affd. 301 N. Y. 629).
The court has viewed the property.
The appropriation consisted of rear acreage and after such appropriation the claimant, Heintz, had approximately 5.10 acres remaining. The above-mentioned buildings were located on this remaining parcel and the claimant still had the same frontage on Saunders Settlement Road. The depth of the remaining parcel varied from a maximum of 476 feet to a minimum of 336 feet.
*1028 The claimant, Burns, had approximately 9.576 acres remaining after the taking with the same frontage on Saunders Settlement Road, with a depth of 478 feet.
The claimants concede that only direct damages are involved and there are no consequential damages to the remaining parcels. As damages for the loss of her property, the claimant, Heintz, seeks the sum of $190,722. Claimant, Burns, the sum of $238,086.
The State contends that the fair market value of the property taken from claimant, Heintz, at the time of the appropriation was $19,100 and the value of the property taken from claimant, Burns, at such time was $23,800.
The claimants called three reputable real estate appraisers who testified to their opinion of the fair market value of the subject properties. Two of these gentlemen valued the appropriated parcel at $6,000 per acre. The third was somewhat more conservative; he assigned a per acre price of $4,500.
On the other hand the real estate appraisers called by the State, both recognized experts in their chosen field, testified to a per acre value of the subject property of $600 per acre and $400 per acre, respectively. Considering the fact that these appraisers are eminent experts and all were valuing the same parcels of property, at the same time, it would seem, at first blush, that our problem of determining the fair market value of the appropriated parcels would tax the acumen of a Solomon.
Upon consideration of the basis upon which the experts formulated their opinions it is obvious that the reason for such disparity in the valuations results from the approach of such experts with respect to the best available use of the property. Of course, the owner is not limited in compensation to the use ■which he makes of the land at the time of the appropriation. (New York Cent. R. R. Co. v. Maloney, 234 N. Y. 208, 218.) And all owners have the right to hold property in anticipation of a rising market price or for whatever personal reasons they may have. (Matter of City of New York [Inwood Park] 230 App. Div. 41, affd. 256 N. Y. 556.)
Although the area in which the subject properties are located has been zoned for agriculture or residential purposes it is the claimants’ contention that there was a reasonable likelihood of a change in the zoning of such properties to industrial, and that they are not concluded by existing zoning classifications. (Masten v. State of New York, 11 A D 2d 370, affd. 9 N Y 2d 796, and the cases cited therein.) The claimants’ experts based their opinion of fair market value on the premise that the properties would probably be zoned industrial and appraised them accordingly.
*1029 In view of the rule in the Hasten case, considerable latitude was permitted the claimants to show that there was a reasonable likelihood of a zoning change. However, under the facts presented we have concluded that there was only a remote possibility that such zoning would be changed to industrial within the foreseeable future.
Since 1950 it was generally expected in the area that a considerable portion of the southwest part of the Town of Lewiston would be devoted to a project utilizing power from the Niagara Biver. It is also a fact that the Niagara Mohawk Power Company had acquired either outright or options approximately 1,000 acres of land in the southwestern part of such town. The power plans called for the construction of a reservoir in the vicinity of the subject properties.
Upon the trial several members of local planning boards including the Town of Lewiston testified that at one time the Lewiston Planning Board considered changing the area to industrial, but such change depended upon the amount of acreage devoted to the reservoir. No change was ever made.
In December, 1956, a proposed development plan known as the Tyron Beport was submitted to the Town of Lewiston authorities, by the consultants employed for such purpose. The subject properties were located in an area described as Community No. 15, which was designated as residential, a housing area for workers in industrial sections to the south. However, the western edge of the Heintz property boardered on Community No. 4, which was designated for nonresidential uses partly because of the power development plans, however, the existing residential development along Saunders Settlement Boad was specifically excepted in the report from such future use. Furthermore, there was no proof of a demand for industrial property in the Town of Lewiston in 1958. Industrial sites were available in neighboring towns. There is no industrial or commercial activity in the general vicinity of the subject property. The nearest industry in the town is a chemical factory 3 miles to the northwest, which has long been zoned industrial, and there was a small industrial area about 2 miles southwest in the Town of Niagara. Moreover the authorities had recently refused to extend the industrial zoning for the chemical company.
The character of the community was generally rural and there had been considerable residential construction of moderately priced dwellings along Saunders Settlement Boad. There have been no changes to industrial zoning for over 20 years. Upon the facts presented we have concluded that there was not *1030 a reasonable likelihood that there would be a change in zoning the subject properties, to industrial.
It may well be that some speculator may have purchased the subject properties in the hope of a zoning change at some future time, but we are not convinced' such speculator exists, or if he does, he would pay a price of $6,000 or even $4,500 per acre for the subject land.
‘ ‘ One whose land is taken by eminent domain is entitled to receive its greatest value for any available use to which it may be put. As bearing on such value, it is competent to show any fact which an owner would naturally and properly bring to the attention of a buyer with whom he was negotiating a sale * * *.
“ Care must be taken, however, not to substitute for reality the mere hope of the owner that the property might be used for some specific purpose.” (Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583, 586.)
In view of our findings with respect to the possibility of zoning change the motions to strike out testimony with respect to the possibility of such change become academic.
The claimants’ experts relied for the most part on 14 alleged comparables when they made their appraisals of the fair market value. Three of these, which we struck from the record, took place one and one-half to two years after the taking. All but three were zoned industrial and two were zoned residential. One was partly residential, partly industrial. None of the said properties were located in the Town of Lewiston, being generally in the Town of Niagara and the City of Niagara Falls. The alleged comparable zoned partly industrial and partly residential was a 12-acre plot and sold at $3,800 an acre. One of the residentials had a two-story brick building, a house, and a gas station located thereon. The largest was 15 acres; 10 of them were 5 acres or less in extent. The full details of the second residential which was a mere lot 83 feet by 200 feet were not fully disclosed to the court.
In view of these facts we cannot consider these sales as comparable to the subject property, and since they were the main support of the appraisals given by the claimants ’ experts we give little consideration to such appraisals.
The claimants also contend that we may consider the value of the property for a power use. We cannot agree with this proposition, for to do so, would add an increment of value based upon the special value of the property to the defendant. (United States v. Miller, 317 U. S. 369.)
*1031 Several parcels were sold from the subject properties prior to 1953. These sales are too remote to he considered reliable barometers of 1958 values. However, on January 8, 1958 prior to the appropriation, Mrs. Heintz granted an option to George Donohue to purchase the property for $36,000. This option was duly recorded in the Niagara County Clerk’s office on January 20, 1958. In our consideration of values we cannot overlook this transaction.
In 1953 the Niagara Mohawk Power Company began acquiring Options on land in the vicinity of the subject properties. These options were subsequently exercised by the power company in 1956 and 1957 and they represented a considerable portion of the real estate transactions in the locality. The sales indicated per acre values of $186 to $600 for vacant tracts of land of varied sizes. While such sales are not indicators of 1958 values, nevertheless the defendant’s experts in making their appraisals placed considerable reliance on certain of these sales. Because of this factor we regard the appraisals as somewhat low, although we find these gentlemen were more realistic than the claimants’ experts in their approach to the valuation of the subject properties.
In arriving at our decision herein we have concluded that the claimants’ property was best suited, at the time of the appropriation, for potential residential development, devoted to moderate priced buildings.
We have considered all the sales in close proximity in time to the appropriation and we have given weight to such sales in relation to their similarity to the subject property. We have also considered the growing demand for rural residential building lots as well as the favorable location of the claimants’ property on a State highway within easy driving distance of the City of Niagara Falls, and upon all the evidence we have concluded the fair market value of the 31.787 acres appropriated from claimant, Louise M. Heintz, on June 2, 1958 was $38,400. That the fair market value of the 39.681 acres appropriated from claimant, Winifred Burns, on June 16, 1958 was $48,000; and the claimants are entitled to awards against the State of New York in such amounts.
The motion to strike out sales to the Power Authority, upon which we have reserved decision, is now academic, such sales were omitted by consent of the parties.
It further appears that on November 28,1960 claimant, Louise M. Heintz, by reason of an assignment made to the Power Authority of the State of New York of moneys due by reason of the appropriation of this property received a payment of *1032 $11,000. As a result thereof the claimant, Louise M. Heintz, is entitled to the sum of $38,400, less $11,000 or $27,400, with interest on $38,400 from June 2, 1958 to December 2, 1958 and from June 23, 1959 to November 28, 1960 and on $27,400 from November 28,1960 to the date of entry of judgment herein.
It appears that on March 11, 1960 the claimant, Winifred Burns, received the sum of $9,000 pursuant to an agreement made with the Power Authority of the State of New York as an advance against any and all sums which might become due her by reason of the appropriation of this property. The claimant, Winifred Burns, is entitled to an award against the State of New York in the amount of $48,000 less $9,000 or $39,000, with interest on $48,000 from June 16, 1958 to December 16, 1958 and from October 27, 1959 to March 11, I960, and on $39,000 from March 11, 1960 to the date of entry of judgment herein.